UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                          CRIMINAL ACTION

VERSUS

MELISSA ROSE BARRETT                              NO. 22-00071-BAJ-RLB

RULING AND ORDER

This matter is proceeding to trial on October 23, 2023. Now before the Court is a **Motion To Assert The Attorney-Client And Work Product Privileges (Doc. 45)** submitted by Defendant Melissa Rose Barrett, and a **Motion To Quash Subpoena (Doc. 46)** submitted by Defendant's former attorneys, non-party the Bryson Law Firm, LLC ("Bryson Law"). The motions are two sides of the same coin, each seeking to preemptively bar the Government from presenting trial testimony from Kayla Lettow, an accountant employed by Bryson Law who prepared and submitted certain tax forms to the IRS on Defendant's behalf. The United States opposes each motion, (Docs. 49, 50), and on October 5, 2023 the Court heard oral argument, (Doc. 56). For the following reasons, the motions will be denied, subject to the parties' right to raise specific objections to Ms. Lettow's testimony at trial (as appropriate).

I.   BACKGROUND

Defendant is a physician who owned and operated Stat Care Clinics, L.L.C., a company whose holdings included two urgent care clinics located in Baton Rouge, Louisiana.

On September 8, 2022, the Grand Jury returned an indictment charging Defendant with one count of tax evasion, in violation of 26 U.S.C. § 7201. (Doc. 1). The indictment alleges that for ten years (beginning in March 2012 and continuing through September 2022), Defendant willfully hid assets and committed various "affirmative acts of evasion," which, in the aggregate, reduced Defendant's stated tax liability by $1.6 million for the calendar years 2007 through 2017. (*Id.* ¶ 12).

Among these alleged "affirmative acts of evasion," and most relevant here, the indictment states that on November 7, 2012, "Defendant submitted, or caused to be submitted, an incomplete IRS Form 433-A to the IRS that excluded a bank account and real property from the list of assets."[1] (*Id.*). Defendant's motion explains the circumstances surrounding the November 7, 2012 Form 433-A as follows:

> In 2012, Dr. Barrett hired the Bryson Law Firm for representation during an IRS collections matter. The law firm represented Dr. Barrett from late 2012 until they were terminated in 2017. During this period, various representatives from the law firm filed powers of attorney to allow communication between the law firm and the IRS on Dr. Barrett's behalf. These representatives served as liaisons between Dr. Barrett and the government for a significant period that underlies the current criminal charges.
>
> In November of 2012, Kayla Lettow [an accountant] was the first representative from the law firm to contact the IRS and begin working to clear Dr. Barrett's back taxes. Ms. Lettow assisted Dr. Barrett in filing disclosures and advised Dr. Barrett on various administrative actions. Ms. Lettow assisted Dr. Barrett in this capacity until late 2013

---

[1] IRS Form 433-A is titled "Collection Information Statement for Wage Earners and Self-Employed Individuals." (*See* Doc. 39-7). "Form 433-A requires a taxpayer to provide current financial information, including employment and wage information, information about personal assets, real property, and vehicles, and self-employment income information. The purpose of Form 433-A is to allow the IRS to determine how a taxpayer can satisfy an outstanding tax liability." *United States v. McConnell*, No. 16-cv-95, 2017 WL 1031770, at *2 n.1 (N.D. Ga. Jan. 4, 2017) (Larkins, III, M.J.), *adopted* 2017 WL 1031784 (N.D. Ga. Jan. 27, 2017) (Totenberg, J.).

when a new representative from the law firm, Mr. Bartage, filed a power of attorney and took over her duties.

(Doc. 45-1 at 1).

The November 7, 2012 Form 433-A at issue appears in the record as Exhibit 7 to the June 30, 2023 Report of W. Lance Stodghill, a tax attorney retained by Defendant "to review [Defendant's] tax, penalties and interest assessed by the IRS for 2007 to 2020 and the amounts (credits) applied to those periods," in order "to determine the current balances due as well as the amounts paid to date." (Doc. 39 at 2). Defendant's name appears in "Section 1: Personal Information," but, as indicated above, the Form appears to have been certified and signed (under penalty of perjury) by Ms. Lettow, with the annotation "POA per email." (Doc. 39-7 at 2, 4). Among other things, at Section 13 the Form required Defendant to disclose "Investments," to "**[i]nclude all corporations, partnerships, limited liability companies, or other business entities in which you are an officer, director, owner, member, or otherwise have a financial interest.**" (Doc. 39-7 at 3, emphasis in original). Despite these express instructions, Defendant's ownership of Stat Care Clinics does not appear in Section 13. (*Id.*).

And this is not all: the November 7 Form included multiple additional omissions and discrepancies. Mr. Stodghill's June 30 Report provides a summary of these errors:

> You asked for my thoughts on the Form 433-A provided to the IRS on November 8, 2012. Based on my review, it appears that – while the relevant information was disclosed – the form was not well prepared in regard to Stat Care Clinics, LLC.
>
> I will start with the cover letter. It was signed by enrolled agent Kayla

3

> Lettow of the Bryson Law Firm. The fax signature indicates it was sent by Tax Advocates LLC. The letter states Dr. and Mrs. Barrett started a new "quick care" business that is a sub-S corporation and would file Form 1120-S. This is incorrect. As noted above, the business was a disregarded entity and the information would be reported on Dr. Barrett's Form 1040.
>
> The Form 433-A requests information regarding Investments and states "Include all corporations, partnerships, limited liability companies or other business entities in which the individual is an officer, director, owner, member, or otherwise has a financial interest." The preparer did not list the LLC in the investments section despite having knowledge of the entity and including it in the cover letter and in the employment section.
>
> The Form 433-A lists Dr. Barrett's employer as "Stat-Care, LLC," rather than the correct legal name of Stat Care Clinics, LLC. This section states "If the taxpayer or spouse is self-employed or has self-employment income, also complete Business Information in Sections 5 and 6." Sections 5 and 6 are located on pages 5 and 6 of the form. However, the preparer omitted pages 5 and 6 from the Form 433-A faxed to the IRS.

(Doc. 39 at 12).

On July 21, 2017, the Government timely submitted its *Daubert* motion seeking to exclude portions of Mr. Stodghill's Report, including Mr. Stodghill's opinions that the November 7 Form 433-A "was not well prepared in regard to Stat Care Clinics, L.L.C." and that the Form's "language is somewhat confusing."[2] (*See* Doc. 36-1 at 3, 11). On August 10, 2023, Defendant responded with an Opposition, characterizing Ms. Lettow's preparation and submission of the November 7, 2012 Form 433-A as follows:

> After hiring the Bryson Law and Accounting Firm, Dr. Barrett was asked to submit a disclosure form to the IRS, Form 433-A. This form asks the taxpayer to disclose certain assets, accounts, and earnings information. In November of 2012, a 433-A was submitted by Dr.

---

[2] The Government's *Daubert* motion is not the subject of this Order and will be addressed separately.

> Barrett's representatives at the Bryson Law Firm. The law firm disclosed Dr. Barrett's ownership of Stat Care Clinics, LLC in a cover letter faxed with the disclosure. However, her representative failed to add the LLC information to a later section on the form. Under the instructions of the 433-A, the LLC should have been included as an investment or business with an appropriate valuation, including property ownership.
>
> The Government is alleging that Dr. Barrett intentionally omitted certain properties from the 433-A to conceal assets from the IRS. Mr. Stodghill reviewed the form and noted the form was not well prepared by Dr. Barrett's representatives as the LLC disclosed in the cover letter was not accounted for in the appropriate sections. A competent tax attorney would have included any LLC ownership under the appropriate section in the body of the form.

(Doc. 37-1 at 17-18).

Three weeks after receiving Defendant's opposition, on August 31, 2023, the Government issued a subpoena seeking Ms. Lettow's trial testimony. (Doc. 46-2 at 1). The subpoena itself puts no limits on the scope of Ms. Lettow's testimony, (*id.*), but the Government now states that the testimony it seeks "pertains solely to documents prepared for the specific purpose of dissemination to the [IRS]." (Doc. 49 at 4; Doc. 50 at 5).

On September 19, 2023, Defendant and Bryson Law filed the motions under review here, each objecting to Ms. Lettow's proposed testimony on the basis of the attorney-client privilege and the work product doctrine. Defendant's motion demands (1) that defense counsel be allowed at all Government interviews of Ms. Lettow "to assert privileges as necessary"; (2) that a hearing be conducted "to determine the scope of the [G]overnment's expected testimony from Ms. Lettow"; and, after "the contents of Ms. Lettow's testimony are obtained," (3) that Defendant be allowed "to lodge objections to specific evidence and make rulings [sic] on admissibility." (Doc.

5

45-1 at 2). Bryson Law's motion seeks "an order precluding any testimony from Kayla Lettow." (Doc. 46 at 2).

The Government opposes both motions with similar versions of the same arguments: (1) the testimony sought is not privileged; (2) any privilege was waived by disclosure of documents sent to the IRS; and (3) any privilege was waived by Defendant's assertion of a reliance defense.[3] (Docs. 49, 50).

## II.  LAW AND ANALYSIS

### A. Bryson Law's Motion To Quash (Doc. 46)

Federal Rule of Criminal Procedure 17(c) expressly permits the Court to quash a subpoena for *documents*, "if compliance would be unreasonable or oppressive." "There is no similar provision with regard to subpoenas to testify. Although courts have granted motions to quash, the better practice in ordinary cases is to require the witness to appear and claim any privilege or immunity he may have." Wright & Miller, 2 FED. PRAC. & PROC. CRIM. § 274 (4th ed.) (footnotes omitted).

Here, Bryson Law seeks to prevent any trial testimony whatsoever from Ms. Lettow, baldly asserting that "[t]he subject subpoena potentially seeks information

---

[3] The Government also half-heartedly invokes the "crime-fraud" exception to the attorney-client privilege, asserting that "[i]n the event … that the Court finds a privilege exists and has survived the waivers above, the Government would assert that the crime fraud privilege also applies and request an evidentiary hearing on the applicability of the crime-fraud exception in this matter." (Doc. 49 at 7; Doc. 50 at 8). This argument fails on the present showing, where the Government has not submitted any evidence to support a determination that Ms. Lettow may have submitted a materially false Form 433-A at Defendant's direction. *See In re Grand Jury Subpoena*, 419 F.3d 329, 336 (5th Cir. 2005) ("In order to invoke the crime-fraud exception, the party seeking to breach the walls of privilege must make out a prima facie case. … Allegations in pleadings are not evidence and are not sufficient to make a prima facie showing that the crime-fraud exception applies." (quotation marks, citations, and alteration omitted)).

6

related to confidential attorney-client communications and the mental processes and legal theories of counsel," and that Defendant "has not waived the attorney-client privilege." (Doc. 46-1 at 2).

"The attorney-client privilege protects communications made in confidence by a client to his lawyer for the purpose of obtaining legal advice." *King v. Univ. Healthcare Sys., L.C.*, 645 F.3d 713, 720–21 (5th Cir. 2011) (quotation marks and alterations omitted)). The work-product doctrine, by contrast, more broadly shields "materials assembled and brought into being in anticipation of litigation." *United States v. El Paso Co.*, 682 F.2d 530, 542 (5th Cir. 1982).

The party invoking either privilege has the burden of demonstrating its applicability. *See King*, 645 F.3d at 720 (attorney-client privilege); *El Paso Co.*, 682 F.2d at 542 (attorney-client privilege and work product doctrine). "To assert the [attorney-client] privilege, a party must show: (1) a confidential communication; (2) to a lawyer or subordinate; (3) for the primary purpose of securing a legal opinion, legal services, or assistance in the legal proceeding." *United States v. Nelson*, 732 F.3d 504, 518 (5th Cir. 2013). To assert the work-product doctrine, a party must show that "the primary motivating purpose behind the creation of the document was to aid in possible future litigation." *El Paso Co.*, 682 F.2d at 542 (quotation marks omitted).

Assuming that Rule 17 permits a motion to quash in these circumstances, Bryson Law nonetheless falls well short of carrying its burden to show that *either* the attorney-client privilege *or* the work product doctrine defeats the Government's subpoena. First, and most obvious, Ms. Lettow is an accountant, not an attorney.

"[N]o confidential accountant-client privilege exists under federal law, and no state created privilege has been recognized in federal cases." *Couch v. United States*, 409 U.S. 322, 335 (1973). And while the so-called "*Kovel* doctrine" allows for narrow circumstances when an accountant working in tandem with an attorney *may* invoke privilege, the U.S. Court of Appeals for the Fifth Circuit instructs that "the privilege does not attach to tax work prepared by accountants unless the accountant is translating complex tax terms into a form intelligible to a lawyer at the lawyer's behest." *El Paso Co.*, 682 F.2d at 541 (citing *United States v. Kovel*, 296 F.2d 918, 922 (2d Cir. 1961)). Bryson Law has made *no attempt* to show that Ms. Lettow's work involved translating complex tax terms or was conducted at an attorney's request, much less that her work was intended to aid in possible litigation. Indeed, Bryson Law fails altogether to provide *any* description of Ms. Lettow's work on Defendant's behalf, and rests its claim merely on a blanket statement that the Government's subpoena "potentially seeks [privileged] information." (Doc. 46-1 at 2). A general allegation is insufficient to establish the attorney-client privilege or the work product doctrine. *See United States v. Davis*, 636 F.2d 1028, 1044 n.20 (5th Cir. 1981) ("Blanket assertions of privilege before a district court are usually unacceptable."); *accord El Paso Co.*, 682 F.2d at 541; *see also Nutmeg Ins. Co. v. Atwell, Vogel & Sterling A Div. of Equifax Servs., Inc.*, 120 F.R.D. 504, 510 (W.D. La. 1988) ("The burden of proving the attorney-client or work-product privileges rests on the party claiming the privilege. A general allegation is insufficient." (citing authorities)).

8

Second, whereas the Government's original subpoena contained no limits regarding the scope of Ms. Lettow's testimony, the Government now states that the testimony it seeks "pertains solely to documents prepared for the specific purpose of dissemination to the [IRS]." (Doc. 49 at 4). Based on this self-imposed limitation, the Court is confident that adequate safeguards exist at trial to evaluate any claim of privilege, ensure the protection of any privileged information, and balance the competing interests at play here (discussed more fully below). In other words, this is the "ordinary case" where the better course is to require Ms. Lettow to appear and, as appropriate, "claim any privilege or immunity [she] may have." 2 Fed. Prac. & Proc. Crim. § 274.

Having failed to specifically show that either the attorney-client privilege or the work product doctrine applies to the work performed by Ms. Lettow on Defendant's behalf, or that exceptional circumstances exist permitting Ms. Lettow to avoid testifying altogether, Bryson Law's motion to quash will be denied. *E.g.*, *El Paso Co.*, 682 F.2d at 538-544 (accountants' "tax-pool analyses"—summaries of client's contingent liabilities for additional taxes potentially owed under audited returns— were not shielded from IRS subpoena by attorney-client privilege or work product doctrine where client made "only a blanket assertion of the privilege" and "failed to meet its burden to assert the privilege specifically"); *accord Davis*, 636 F.2d at 1039-45 & n.20 (rejecting accountants' "blanket assertions concerning the attorney-client privilege, the work product doctrine, and their client's fifth amendment privilege," and explaining the limited instances in which accounting services performed

9

ancillary to legal advice may fall within the attorney-client privilege and/or work product doctrine).

### B. Defendant's Motion To Assert The Attorney-Client And Work Product Privileges (Doc. 45)

Defendant's motion fares no better. As above, Defendant's request to limit Ms. Lettow's testimony is based on blanket assertions of the attorney client privilege and the work product doctrine. But again, there is no accountant-client privilege under federal law; Defendant bears the burden to show that privilege applies; and Defendant has failed to provide any specific explanation (or proof) whatsoever regarding why Ms. Lettow's accounting services are protected here. In short, the same deficiencies fatal to Bryson Law's motion to quash, *supra*, also defeat Defendant's invocation of privilege at this stage.

Second, again, Ms. Lettow's testimony will focus "solely [on] documents prepared for the specific purpose of dissemination to the [IRS]." (Doc. 50 at 5). As noted in the Government's opposition, (Doc. 50 at 5-6), Fifth Circuit law holds that information passed "between the attorney-accountant and client" that is subsequently disclosed to the IRS "directly or indirectly … is not a confidential communication and hence is not privileged." *Davis*, 636 F.2d at 1044 n.18 (citing authorities). Moreover, "disclosure of any significant portion of a confidential communication waives the privilege as to the whole." *Id.* Plainly the information contained on the face of any forms that Ms. Lettow prepared and submitted to the IRS on Defendant's behalf—including the November 7 Form 433-A—is fair game for examination at trial. *Id.*

Finally, and equally important, with regard to the November 7 Form 433-A, Defendant has potentially waived any claim of privilege by putting at issue whether the errors appearing on the face of this Form are attributable solely to Ms. Lettow's incompetence, and *not* Defendant's intentional conduct. *See United States v. Miller*, 600 F.2d 498, 502 (5th Cir. 1979) (holding that a defendant waives the attorney client privilege by taking a position that "his actions were in good faith reliance on counsel's advice"). As set forth above, Mr. Stodghill's Report states that Ms. Lettow did not list Stat Care Clinics in the Form 433-A's "investments section despite having knowledge of the entity and including it in the cover letter and in the employment section." (Doc. 39 at 12). Defendant's opposition to the Government's *Daubert* motion reiterates that Ms. Lettow omitted this information from the investments section, and states that "[a] competent tax attorney would have included any LLC ownership under the appropriate section in the body of the form." (Doc. 37-1 at 17-18). Insofar as "the intentional filing of a false Form 433-A" is an affirmative act of tax evasion sufficient to establish a violation of 26 U.S.C. § 7201, *United States v. Crandell*, 72 F.4th 110, 114 (5th Cir. 2023), these statements plainly inject an attorney-accountant incompetence/good faith reliance defense into this case. Should Defendant offer some version of this defense at trial—through testimony of Defendant, Mr. Stodghill, or another witness—the Government must also be allowed to question such witness(es) regarding the circumstances that resulted in the November 7 Form 433-A. *Miller*, 600 F.2d at 501 ("We obviously cannot condone a practice that enables a defendant or any

11

witness, after giving the jury his version of a privileged communication, to prevent the cross-examiner from utilizing the communication itself to get at the truth.").

In sum, having failed to prove that either the attorney-client privilege or the work product doctrine applies to Ms. Lettow's testimony, and having put at issue whether the information appearing on the November 7 Form 433-A resulted from Ms. Lettow's mistake or negligence, Defendant's motion will be denied. Defendant may, of course, raise attorney-client privilege and work product objections to Ms. Lettow's testimony at trial (as appropriate), where they may be evaluated in the context of an evidentiary record.

### III. CONCLUSION

Accordingly, for the reasons set forth herein, and for the reasons previously set forth on the record at the October 5, 2023 hearing,

**IT IS ORDERED** that Defendant's **Motion To Assert The Attorney-Client And Work Product Privileges (Doc. 45)** be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Bryson Law's **Motion To Quash Subpoena (Doc. 46)** be and is hereby **DENIED**.

Baton Rouge, Louisiana, this 13th day of October, 2023

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**