UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

UNITED STATES OF AMERICA                                CRIMINAL ACTION

VERSUS

MELISSA ROSE BARRETT                                    NO. 22-00071-BAJ-SDJ

### ORDER

This matter is proceeding to trial on October 23, 2023. Now before the Court is the **Motion In Limine To Exclude Expert Testimony Of W. Lance Stodghill And Certain Related Evidence And Testimony (Doc. 36)** submitted by the United States. The Motion is opposed. (Doc. 36). At oral argument on October 5, 2023, the Government stated that it will not take the position that Defendant improperly grouped assets owned by Stat Care Clinics, L.L.C., a company owned and operated by Defendant. Because the relevance of Sections 8, 10, and 11 of Stodghill's Report depended on the Government making that argument, those Sections are now excluded as irrelevant. Additionally, the Court will defer to trial any ruling on the admissibility of Sections 4, 6, 7 (to the extent it discusses preparation and submission of the November 7 Form 433-A), and 9 of the Report. As for the Government's remaining objections, for reasons stated below, the Government's Motion will be denied in part (with respect to the challenge to Stodghill's status as an expert) and granted in part (with respect to the Government's remaining objections).

I.   BACKGROUND

Defendant is a physician who owned and operated Stat Care Clinics, a

company whose holdings included two urgent care clinics located in Baton Rouge, Louisiana.

On September 8, 2022, the Grand Jury returned an indictment charging Defendant with one count of tax evasion, in violation of 26 U.S.C. § 7201. (Doc. 1). The indictment alleges that for ten years (beginning in March 2012 and continuing through September 2022), Defendant willfully hid assets and committed various "affirmative acts of evasion," which, in the aggregate, reduced Defendant's stated tax liability by $1.6 million for the calendar years 2007 through 2017. (*Id.* ¶ 12).

On June 30, 2023, Defendant provided to the Government an expert Report prepared by W. Lance Stodghill, a tax attorney retained "to review [Defendant's] tax, penalties and interest assessed by the IRS for 2007 to 2020 and the amounts (credits) applied to those periods" in order "to determine the current balances due as well as the amounts paid to date." (Doc. 39 at 2). Relevant here, Sections 1–3, 5, 7, and 12 of the Report are summarized below:

> 1. "Professional Background": Stodghill worked in the Office of Chief Counsel for the IRS between 1999 and 2007, where he "represented the [IRS] before the United States Tax Court and advised IRS employees regarding potentially abusive tax avoidance transactions and other matters." (Doc. 36 at 1). Stodghill currently works in private practice, advising taxpayers on issues including "IRS audits collection matters, appeals and Tax Court litigation in the areas of income, employment,

and excise taxes." (*Id.*).

2. "Documents Reviewed": Stodghill reviewed the following documents to prepare his Report: the indictment, the IRS Special Agent's Report, amended returns submitted by Defendant, Defendant's IRS civil collection file, IRS Tax Transcripts for Defendant for relevant years, and interview memoranda. (*Id.* at 1–2).

3. "Taxes, Penalties and Interest": In this section, Stodghill discusses the results of his review of the "tax, penalties and interest assessed [against Defendant] by the IRS for 2007 to 2020 and the amounts (credits) applied to those periods." (*Id.* at 2). Stodghill "reviewed the transcripts of account ... dated June 13, 2023 [sic] to determine the current balances due as well as the amounts paid to date." (*Id.*). In successive tables, Stodghill sets forth his conclusions regarding: the total tax, penalty, and interest by year for Defendant, the payments made for those years, and the balances or refunds due as of June 2023, (*Id.* at 3); the total tax, penalties, and interest accrued to Defendant by year based on transcripts of account dated June 2023, (*Id.* at 4); the total tax, penalties, and interest paid by Defendant by year based on June 2023 transcripts of account, (*Id.*); and a final summary of Defendant's taxes, penalties, and interest paid, overpayments to be refunded, and the total payments and credits, (*Id.* at 5).

5. "Stat Care Clinics, L.L.C.": In this section, Stodghill responds to Defendant's inquiry about "the tax status of [Stat Care Clinics], the rules regarding disregarded entities, and the reasonableness of [Defendant]'s belief there was no distinction between her and the LLC." (*Id.* at 8). After explaining what a disregarded entity is, Stodghill opines that "[b]ecause [Stat Care Clinics] was a disregarded entity, and [Defendant] treated the clinics as a sole proprietorship, it is not unreasonable for [Defendant] to see no distinction between herself and the business entity." (*Id.* at 9).

7. "Form 433-A - Collection Information Statement for Wage Earners and Self-Employed Individuals": In this section, Stodghill reviews the Form 433-A prepared by enrolled agent Kayla Lettow on Defendant's behalf and submitted by Lettow to the IRS on November 8, 2012. He states that Lettow did not list Stat Care Clinics in the Form 433-A's "investments section despite having knowledge of the entity and including it in the cover letter and in the employment section." (*Id.* at 12). He also offers his opinion that the Form's "language is somewhat confusing." (*Id.*). After noting that a Form 433-A is designed to assess "the reasonable collection potential of a taxpayer," Stodghill reviews the collection alternatives available to the IRS before opining that "[b]ased on the assets and income in this case, it is unlikely that [Defendant] would

4

have qualified for an offer in compromise." (*Id.*).

12. "Summary of taxes paid": In this final section, Stodghill summarizes his conclusions regarding the total amounts of tax, penalties, and interest paid and overpayments owed by Defendant's Form 1040 accounts from 2007 to 2020 and by Stat Care Clinics in employment taxes from "Quarter 1 2012 to Quarter 2 2022," presumably as of June 2023. (*Id.* at 17–18).

The Report also includes nine exhibits.

On July 21, 2023, the Government moved to exclude Stodghill's Report, and related evidence and testimony. On August 10, Defendant filed a response to the Government's Motion (Doc. 37), and on August 28, the Government filed a reply (Doc. 42). On October 5, 2023, the Court heard argument on the Government's Motion, and thereafter took the matter under advisement.

## II. LAW AND ANALYSIS

The admissibility of expert testimony is governed by Federal Rule of Evidence ("Rule") 702 and *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, which require the Court to serve as a gatekeeper and ensure that all scientific testimony is relevant and reliable. *See* 509 U.S. 579, 597 (1993). This gatekeeping role extends to all expert testimony, whether scientific or not. *See Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 147 (1999).

Under Rule 702, the Court must consider three primary requirements in

determining the admissibility of expert testimony: (1) qualifications of the expert witness; (2) relevance of the testimony; and (3) reliability of the principles and methodology upon which the testimony is based. *Fayard v. Tire Kingdom, Inc.*, No. 09-171-BAJ, 2010 WL 3999011, at *1 (M.D. La. Oct. 12, 2010).

This list is merely illustrative, however, and the Supreme Court has also emphasized that "the *Daubert* analysis is a 'flexible' one, and that 'the factors identified in *Daubert* may or may not be pertinent in assessing reliability, depending on the nature of the issue, the expert's particular expertise, and the subject of his testimony." *Pipitone v. Biomatrix, Inc.*, 288 F.3d 239, 244 (5th Cir. 2002) (*citing Kumho Tire*, 526 U.S. at 150). "The district court's responsibility is 'to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field.'" *Id.* (quoting *Kumho Tire*, 526 U.S. at 152).

Ultimately, the Court has broad discretion in deciding whether to admit expert opinion testimony. *Hidden Oaks Ltd. v. City of Austin*, 138 F.3d 1036, 1050 (5th Cir. 1998). "Notwithstanding *Daubert*, the Court remains cognizant that 'the rejection of expert testimony is the exception and not the rule.'" *Barnett v. Nat'l Cont'l Ins. Co.*, No. 3:17-CV-153-JWD-EWD, 2019 WL 126732, at *3 (M.D. La. Jan. 8, 2019) (*citing Johnson v. Samsung Elecs. Am., Inc.*, 277 F.R.D. 161, 165 (E.D. La. 2011)).

6

As noted, the Defendant has been charged with one count of tax evasion, in violation of 26 U.S.C. § 7201. The elements of this charge are: "(1) willfulness, (2) existence of a tax deficiency; and (3) an affirmative act constituting an evasion or attempted evasion of the tax." *United States v. Bolton*, 908 F.3d 75, 88 (5th Cir. 2018). In the context of tax cases, willfulness has been defined as "the voluntary, intentional violation of a known legal duty." *Cheek v. United States*, 498 U.S. 192, 199-201 (1991).

The Government challenges Stodghill's status as an expert and objects to the admissibility of Stodghill's Report on various grounds. (*See* Doc. 37 at 8–12). As noted above, the Court will defer ruling on the Government's objections to Sections 4, 6, 7, and 9. Additionally, Sections 8, 10, and 11 are no longer relevant because of the Government's representations at oral argument. The Court will address each of the remaining objections in turn.

### A. Challenge To Stodghill's Expert Status

To begin, the Government challenges Stodghill's status as an expert because he did not advise the Defendant during the indictment period, has testified as an expert only in civil matters, and has "no direct background or experience in the criminal administration of tax laws." (Doc. 36-1 at 8). Defendant responds by recounting Stodghill's background and professional experience and noting that Stodghill does not opine on whether activity violates criminal tax laws, and therefore no criminal tax attorney is needed. (Doc. 37-1 at 5).

Stodghill graduated *cum laude* from the University of Houston Law Center

7

and earned a Master of Business Administration in the same year from the University of Houston. (Doc. 39-9 at 1–2). Since earning these degrees, Stodghill has worked for at least 24 years as a tax attorney, including 8 years at the IRS, during which time he advised revenue agents. (Doc. 37-1 at 5). He has presented continuing education courses on subjects including "federal tax liens, IRS collections, [and] tax issues in divorce." (Doc. 39 at 1). Finally, Stodghill is a member of the "State Bar of Texas - Tax Section" and the "Houston Bar Association - Tax Section," among other professional memberships. (Doc. 39-9 at 3). Although Stodghill does not have experience in criminal tax matters, his Report deals with civil tax matters about which he has significant experience. (*See* Doc. 39 at 1). "Generally, if there is some reasonable indication of qualifications, the district court may admit the expert's testimony, and then the expert's qualifications become an issue for the trier of fact." *Willow Bend Ventures, LLC v. Van Hook*, 554 F. Supp. 3d 808, 817 (E.D. La. 2020). Because Stodghill has significant professional experience in the matters about which he is testifying, the Court finds that Stodghill is qualified to testify as an expert in this case.

### B. Testimony Regarding Income Tax Payments Made After 2017

The Government asks the Court to exclude any evidence and testimony about tax payments made after 2017 as irrelevant under Fed. R. Evid. 401. (Doc. 36-1 at 8–9). In response, Defendant distinguishes between payments made from 2017 to the September 2022 indictment, and payments made after the indictment. (Doc. 37-1 at

8

7). The former payments, Defendant argues, are relevant because they (a) challenge the willfulness underlying specific overt acts, (b) rebut the Government's assertion that Defendant was not paying taxes up until the date of indictment, and (c) challenge the Government's proffered tax deficiency when certain overt acts occurred. (*Id.*). Defendant argues that post-indictment payments are relevant because the Government previously indicated its intent to introduce post-indictment tax deficiencies as similar act evidence under Fed. R. Evid. 404(b). (*Id.*).

First, the Government has not filed a notice that it will introduce 404(b) evidence regarding Defendant's post-indictment activity. (*See* Doc. 57). Accordingly, Defendant's argument about the relevance of post-indictment payments is moot. For this reason and additional reasons set forth on the record at the October 5, 2023 hearing, evidence regarding acts that occurred after the indictment will be excluded from trial. To the extent Sections 3 and 12 of Stodghill's Report include information about post-indictment payments, they are excluded.

Second, with respect to the admissibility of pre-indictment—but post-indictment *period* (2007–2017)—evidence, the Court defers its ruling to trial.

### C. Opinion Regarding Reasonableness

The Government objects to Section 5 of Stodghill's Report, which offers Stodghill's opinion that Defendant was "not unreasonable" to believe that there was no distinction between Defendant and Stat Care Clinics. (Doc 39 at 9). In the Report, Stodghill frames his conclusion in the following terms:

9

> For federal income tax purposes, Stat Care Clinics, LLC was treated as a disregarded entity. Dr. Barrett was responsible for taxes on profits created through the company. Stat Care Clinics, LLC was not a separate entity for federal income taxation as all taxes flowed to Dr. Barrett personally.
>
> Because Stat Care Clinics, LLC was a disregarded entity, and Dr. Barrett treated the clinics as a sole proprietorship, it is not unreasonable for Dr. Barrett to see no distinction between herself and the business entity.

(Doc. 39 at 9).

Whether Defendant's alleged tax evasion was willful or the result of a "reasonable" mistake regarding the tax laws is an ultimate issue for the jury to decide. *Bolton*, 908 F.3d at 88. The Fifth Circuit instructs that, generally, the jury is quite capable of making this assessment *without* the aid of expert testimony. *See United States v. West*, 22 F.3d 586, 599 (5th Cir. 1994) ("Because the typical juror is qualified to determine intelligently and to the best degree possible both the reasonableness of a client relying upon the advice of an attorney and accountant retained to render such advice and whether the client did so in good faith after making full disclosure, expert testimony as to the legal basis underlying the advice—i.e., the reasonableness of their interpretation of the provisions of the Texas Homestead Act—would not have assisted the jury"). Nonetheless, Defendant responds that the Fifth Circuit allowed similar expert testimony in a criminal tax case. *See United States v. Garber*, 607 F.2d 92, 99 (5th Cir. 1979) (overturning exclusion of expert testimony that "a recognized theory of tax law support[ed] [defendant's] feelings" about competing theories regarding the taxation of specific

10

items).

Importantly, since issuing its *Garber* decision, the Fifth Circuit expressly limited that case to its "unique, near bizarre" facts, because the specific tax duty at issue (the defendant's failure to report income from the sale of her blood) was "so uncertain as to approach the level of vagueness." *United States v. Burton*, 737 F.2d 439, 444 (5th Cir. 1984). In doing so, the Circuit clarified that before a defendant may offer expert testimony supporting the credibility of his alleged belief regarding the tax laws, the defendant still must generally "link his own belief to the evidence of legal uncertainty." *Id.*; *see also In re Wyly*, 552 B.R. 338, 361 (Bankr. N.D. Tex. 2016) (*citing Burton*, 737 F.2d at 444) ("[T]estimony regarding the fact of uncertainty as to the law among the relevant [cross border trust and estate and tax bars] during the relevant time period need only be admitted if the Debtors knew of this legal uncertainty, as this is the only way this legal uncertainty could have affected their states of mind."). Defendant makes no such showing here. Nor does Defendant show that she relied on the advice of Stodghill or any other expert in forming her beliefs regarding the tax law. Because Defendant makes no showing that she knew of legal uncertainty regarding the tax status of her LLC *or* that this legal uncertainty drove her belief, Section 5 of Stodghill's Report and related testimony will be excluded. The jury "is qualified to determine intelligently and to the best degree possible" the reasonableness of Defendant's belief regarding the distinction between herself and Stat Care Clinics for taxation purposes. *West*, 22 F.3d at 599.

11

### D. Testimony Regarding The 433-A Form

On November 7, 2012, Defendant's representatives at the Bryson Law Firm, LLC, submitted a Form 433-A[1] to the IRS that failed to disclose Defendant's ownership of Stat Care Clinics, among other errors. (Doc. 37-1 at 17). Section 7 of Stodghill's Report concludes that "the form was not well prepared," (Doc. 39 at 12), and Defendant argues that "a competent tax attorney would have included" the information. (Doc. 37-1 at 18). The Government argues that Stodghill's opinion regarding the preparation of the Form 433-A is irrelevant to willfulness or any other element of tax evasion. (Doc. 36-1 at 10).

Certainly, a plausible basis exists to exclude Stodghill's conclusions regarding the accuracy of the November 7 Form 433-A. Indeed, it appears patently obvious that the Form 433-A in question was "not well prepared"—for multiple reasons cited in the Stodghill Report. Generally, an expert's testimony is not relevant and may be excluded if it is directed at an issue that is "well within the common sense understanding of jurors or requires no expert testimony." *Vogler v. Blackmore*, 352 F.3d 150, 156 (5th Cir. 2003); *accord Kohatsu v. United States*, 351 F.2d 898, 903–04 (9th Cir. 1965) ("[T]here was substantial evidence in this case that errors were in fact made . . . It was for the jury to determine whether the errors and the failure to report income resulted solely from bookkeeping carelessness or from a willful attempt to

---

[1] The November 7, 2012 Form 433-A at issue appears in the record as Exhibit 7 to Stodghill's Report.

12

evade income tax. The accountant's opinion or conclusion that the errors resulted from appellant's carelessness, without intent to evade his income tax, would have been improper as going beyond the scope of his expert competence.").

Still, however, the Court stops short of preemptively excluding this evidence here. As set forth in this Court's recent order denying Defendant's motion to exclude testimony related to the November 7 Form 433-A on the basis of attorney client privilege and the work product doctrine, Stodghill's (and Defendant's) position regarding the Form 433-A potentially injects an attorney-accountant incompetence/good faith reliance defense into this case. (Doc. 69 at 11-12). Whether Defendant intends to pursue this defense at trial—through the testimony of Stodghill, Defendant, or other witnesses—remains to be seen. Should Defendant take this course, she may waive any privilege that she may otherwise enjoy as it relates to the preparation and submission of the November 7 Form 433-A. The Court cannot make a determination one way or the other on the present record, and, as such, will reserve ruling on the admissibility of Section 7 of the Report pending the evidence at trial. *E.g., United States v. Williams*, No. CR 20-139, 2022 WL 2132327, at *9 (E.D. La. June 14, 2022) (deferring to trial whether to allow limited testimony by a defense expert "concerning third party tax preparer standards (and the attendant potential reasonableness of taxpayer reliance)") (Africk, J.).

### E. Testimony About Offers In Compromise

The Government objects to any discussions regarding a potential offer-in-

compromise or payment plan as irrelevant under Fed. R. Evid. 401. (Doc. 36-1 at 10). Defendant counters that her belief that settlements would come "speaks to [her] state of mind when she failed to pay the back taxes for the first few years of the collections process." (Doc. 37-1 at 16). A bankruptcy court dismissed a debtor's similar argument that his submission of "offers-in-compromise" to the IRS, all of which were rejected, was relevant to his good faith and lack of willfulness to evade taxes. *In re Herron*, 634 B.R. 883, 899 (Bankr. W.D. Pa. 2021). That court held that "without some evidence as to the nature and circumstances of the offers-in-compromise made by the Debtor, not just the bare fact of their existence," no finding of good faith was supported. *Id.*

Here, Defendant makes a distinct, but less convincing argument: her belief that offers in compromise *might* come somehow speaks to her good faith and lack of intent to evade paying taxes. (Doc. 37-1 at p. 16). Making her argument even less convincing is that Stodghill's analysis forecloses the very hopes Defendant allegedly harbored. (*See* Doc. 39 at 13 ("Based on the assets and income in this case, it is unlikely that [Defendant] would have qualified for an offer in compromise.")). Because testimony about the likelihood of Defendant receiving offers-in-compromise or a payment plan, also found in Section 7 of the Report, is irrelevant and likely to confuse the jury, it is excluded. *See, e.g., United States v. Herman*, 997 F.3d 251, 268-271 (5th Cir. 2021) (in prosecution for filing false tax returns, trial court did not err in excluding expert testimony about alternative calculations of revenue and expenses as irrelevant and confusing to the jury).

### III. CONCLUSION

For the reasons set forth herein, in addition to the reasons previously set forth on the record at the October 5, 2023 hearing,

**IT IS ORDERED** that the United States' **Motion In Limine To Exclude Expert Testimony Of W. Lance Stodghill And Certain Related Evidence and Testimony (Doc. 36)** be and is hereby **GRANTED IN PART**.

**IT IS FURTHER ORDERED** that Sections 5, 8, 10, and 11 of the expert report of W. Lance Stodghill (Doc. 39) are **EXCLUDED**, and that Section 7 is **EXLUDED IN PART** to the extent it addresses offers of compromise. Sections 3 and 12 are **EXCLUDED** to the extent they discuss post-indictment activity. The Court defers to trial ruling on Sections 4, 6, 7 (to the extent it addresses preparation and submission of the November 7 Form 433-A), and 9, and any additional objections to evidence from after the period of the indictment (2007–2017).

Baton Rouge, Louisiana, this 17th day of October, 2023

_____
JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA